**This order is SIGNED.**

**Dated: March 4, 2022**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>CYNTHIA MORRISSEY,<br><br>        Debtor. | Bankruptcy Case No. 20-20505<br>Chapter 7 |
| DAVID STRAHAN,<br><br>        Plaintiff,<br><br>v.<br><br>CYNTHIA EVANS,<br><br>        Defendant. | Hon. R. Kimball Mosier<br><br><br><br>Adversary Proceeding No. 20-2045 |

### MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO STRIKE

Plaintiff David Strahan and Defendant Cynthia Morrissey *fka* Cynthia Evans were married for approximately fifteen years and had four children during that time. When they divorced in 2008, the Plaintiff became obligated to pay child support to the Defendant, but under the terms of the divorce decrees such support would cease with respect to a particular child when that child attained the age of majority or married. The parties' youngest child, then still a minor and named

here by her initials B.S., married in August 2018. Unaware of the marriage, the Plaintiff continued paying child support for six months.

When he discovered the marriage, he ceased paying child support and sought to recover from the Defendant the amount he had paid during those six months. He obtained a judgment against the Defendant in state court for the overpaid child support plus court costs. After the Defendant filed bankruptcy in this Court, the Plaintiff timely commenced the above-captioned adversary proceeding seeking to except that debt from the Defendant's discharge.

The Defendant moved for summary judgment first, prevailing on one of the Plaintiff's three claims. Then the Plaintiff filed his own motion for summary judgment. To oppose that motion, the Defendant submitted the affidavit of Jonathan Strahan, one of the parties' children, whom neither party had disclosed as a witness to that point. The Plaintiff included in his reply memorandum in support of his motion a request to strike Jonathan's affidavit under Rule 37(c)(1) (Motion to Strike).[1] The Court treated it as a motion and established a briefing schedule.

The parties fully briefed the motion, and the Court conducted a hearing at which it heard oral argument and issued its ruling granting the Motion to Strike from the bench. After considering the Motion to Strike and the parties' memoranda; after considering the parties' oral arguments; and after conducting an independent review of applicable law, the Court issues the following Memorandum Decision granting the Motion to Strike, which memorializes the Court's oral ruling without altering its substance or the Court's final judgment.[2]

---

[1] *See* Dkt. No. 28, at 4-5. All subsequent references to docket numbers are to those in this adversary proceeding unless otherwise indicated.

[2] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be equally binding as both.

## I. JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to 28 U.S.C. § 1334 and § 157(b)(1). This matter is a core proceeding within the definition of 28 U.S.C. § 157(b)(2)(I), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

## II. PROCEDURAL BACKGROUND

The Plaintiff commenced this adversary proceeding on May 1, 2020, alleging three grounds to except the Defendant's debt to him from her discharge: 11 U.S.C. § 523(a)(2)(A), (a)(5), and (a)(15).[3] The Defendant then sought summary judgment on all claims. The Court conducted a hearing on that motion on January 12, 2021, at which the parties conceded that the Defendant was entitled to summary judgment on the § 523(a)(5) claim. Accordingly, the Court granted the Defendant's motion as to that claim but, after examining the material facts germane to the remaining claims, denied summary judgment on the § 523(a)(2)(A) and (a)(15) claims.[4]

Three and a half weeks later, on February 5, 2021—which, incidentally, was the fact discovery cut-off date[5]—the Plaintiff filed the present motion, which seeks summary judgment on the § 523(a)(15) claim alone. As part of her opposition to that motion, the Defendant submitted the affidavit of Jonathan Strahan. The clear purpose of the affidavit was to create a genuine dispute regarding when the Plaintiff learned of B.S.'s marriage.[6] According to the relevant portion of the affidavit, Jonathan and the Plaintiff met for lunch sometime between December 2018 and January

---

[3] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.
[4] Dkt. No. 24.
[5] Dkt. No. 8, ¶ 3.
[6] The Defendant has essentially admitted this. *See* Dkt. No. 31, at 7 ("The rebuttal testimony of Jonathan Strahan was submitted in response to the affidavit filed with plaintiff's motion in order to identify that David Strahan's assertion was wrong—or at a minimum 'in dispute.'"); Dkt. No. 27, at 2 (asserting that summary judgment should be denied because there is a genuine dispute regarding when the Plaintiff first became aware of B.S.'s marriage).

2019—Jonathan does not provide a specific date—at which meeting the Plaintiff informed Jonathan that he had known of B.S.'s marriage for some time, perhaps months. By contrast, the Plaintiff has maintained that he did not know of B.S.'s marriage until February 28, 2019.

The Court took note of the Motion to Strike at the preliminary hearing on the Plaintiff's motion for summary judgment, set a briefing schedule on whether the Court should receive the affidavit, and declined to consider the Plaintiff's motion for summary judgment until such briefing was complete. Both parties submitted briefing on the question of whether Jonathan's affidavit should be stricken.[7] The Court then conducted a final hearing, at which it considered and granted the Motion to Strike and considered the Plaintiff's motion for summary judgment in light of that ruling.

## III. DISCUSSION

Before dealing with the merits of the Plaintiff's Motion to Strike, the Court must address the procedural argument raised by the Defendant, namely, that the Motion to Strike is not properly before the Court due to lack of compliance with Local Rule 7056-1. That rule provides that "[n]o motion may be included in a memorandum in opposition or reply memorandum. Such a motion

---

[7] The Defendant's brief included what can only be deemed a request to strike the Second Affidavit of David Strahan, *see* Dkt. No. 31, at 8, which the Plaintiff attached to his reply memorandum in support of his motion for summary judgment. This additional affidavit repeats some information contained in the Plaintiff's affidavit attached to his motion for summary judgment, but principally contradicts and clarifies the assertions made in Jonathan's affidavit. Because the Plaintiff did not serve the Second Affidavit of David Strahan with his motion for summary judgment, the Defendant argues that the affidavit runs afoul of Fed. R. Civ. P. 6(c)(2), which states that "[a]ny affidavit supporting a motion must be served with the motion." Rule 6(c)(2), however, does not apply in bankruptcy, but Fed. R. Bankr. P. 9006(d) contains an analogous provision: "When a motion is supported by affidavit, the affidavit shall be served with the motion." The Court need not decide whether the Second Affidavit of David Strahan violates Rule 9006(d) and, if so, what the appropriate remedy is because the Court has not cited that affidavit in ruling on the Plaintiff's motion for summary judgment.

must be made in a separate document."[8] There is no dispute that the Plaintiff included his Motion
to Strike within his reply memorandum and did not file a separate document.

Even so, the Court concludes that the Motion to Strike is properly before it because it
afforded the Defendant all of the procedural safeguards she would have received had the Plaintiff
filed a separate motion. The grounds asserted by the Plaintiff to strike Jonathan's affidavit were
quite clear: He contended that the Defendant had failed to properly identify Jonathan as a witness
under Rule 26 prior to submitting his affidavit; therefore, the affidavit should be stricken under
Rule 37(c)(1). Rather than have the Plaintiff go to the duplicative effort of filing a new motion,
the Court established a briefing schedule on the issue of Jonathan's affidavit, thereby mirroring
the process that would have occurred had the Plaintiff filed a separate motion in the first instance.[9]
Having received and availed herself of the opportunity to submit briefing on the Motion to Strike,
the Defendant could not identify at the final hearing any prejudice she suffered stemming from the
Plaintiff's non-compliance with Local Rule 7056-1(f). The Court is not required to disregard or
deny the Plaintiff's Motion to Strike because it was not made separately. It would significantly
elevate form over substance to refuse to consider the Motion to Strike when the Defendant received
the same procedural due process she would have had if the Plaintiff had complied with Local Rule
7056-1(f). The Court will therefore deny this challenge to the Motion to Strike.

On to the merits. Rule 26(a)(1) requires parties to make certain initial disclosures to the
other parties "without awaiting a discovery request," among which are "the name and, if known,
the address and telephone number of each individual likely to have discoverable information—
along with the subjects of that information—that the disclosing party may use to support its claims

[8] Bankr. D. Ut. LBR 7056-1(f).
[9] The Court gave the Defendant fourteen days from the preliminary hearing to file her brief and the
Plaintiff a week after that to submit his reply brief. These time periods comport with those required by
Bankr. D. Ut. LBR 9006-1(b) & (c).

or defenses, unless the use would be solely for impeachment."[10] Parties must make their initial

disclosures "at or within 14 days after the parties' Rule 26(f) conference unless a different time is

set by stipulation or court order."[11] In this case, the parties conducted their Rule 26(f) conference

telephonically on June 25, 2020 and stipulated to complete their Rule 26(a)(1) disclosures within

fifteen days, *i.e.,* by July 10, 2020.[12]

The Defendant filed her initial disclosures with the Court and served them on the Plaintiff's

counsel July 10 but did not disclose Jonathan as a witness.[13] Rule 26(g)(1) requires a party's

attorney to sign every Rule 26(a)(1) disclosure—which the Defendant's counsel did—and provides

that such signature certifies, "to the best of the [attorney's] knowledge, information, and belief

formed after a reasonable inquiry" that the disclosure "is complete and correct as of the time it is

made."[14] The Defendant stated, however, that the disclosures were "based on information currently

available" to her and expressly "reserve[d] the right to modify, amend, or supplement her

disclosures, as provided in [Rule] 26(e), after further investigation and discovery."[15] In fact, the

Defendant did not merely have the right to supplement, she had the continuing obligation to do

so.[16] Rule 26(e) provides that "[a] party who has made a disclosure under Rule 26(a)," as the

---

[10] Fed. R. Civ. P. 26(a)(1)(A)(i).

[11] Fed. R. Civ. P. 26(a)(1)(C).

[12] Dkt. No. 7, at 1-2. The Report of Parties' Planning Metting [sic] refers to the non-existent Fed. R. Civ. P. 26(a)(a), but the Court assumes that the parties meant to refer to Rule 26(a)(1). Local Rule 7016-1(b) requires parties to "prepare a Report of Parties' Planning Meeting which conforms substantially with Local Form 7016-1" and file it "[n]o later than 14 days after the parties' planning conference." Bankr. D. Ut. LBR 7016-1(b). In turn, paragraph 2 of Local Form 7016-1, titled Pre-Discovery Disclosures, states the following, asking the parties to fill in the relevant information: "The parties [have exchanged] [will exchange] by _____ the information required by Fed. R. Civ. P. 26(a)(1) and Local Rule 7016-1." The parties' Report, filed the same day as their conference, conforms substantially with Local Form 7016-1, including paragraph 2. Since Local Form 7016-1 refers to Rule 26(a)(1), the Court concludes that the parties meant to refer to it as well and the reference to Rule 26(a)(a) is simply a typographical error.
[13] *See* Dkt. No. 11.
[14] Fed. R. Civ. P. 26(g)(1)(A).
[15] *Id.* at 2.
[16] *E.g., Hare v. Baur*, Civ. No. 19-1091 RCB/GJF, 2020 WL 5763864, at *2 (D.N.M. Sept. 28, 2020) (citing Fed. R. Civ. P. 26(e)).

Defendant did here, "or who has responded to an interrogatory, request for production, or request for admission," which the Defendant also did,[17] "must supplement or correct its disclosure . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."[18]

> To satisfy the "made known" requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must [be] in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient.[19]

The Defendant makes no claim to have otherwise made Jonathan known to the Plaintiff as a witness. The record shows that it was not until March 29, 2021—262 days after the Rule 26(a)(1) deadline, fifty-two days after the close of fact discovery and the filing of the Plaintiff's motion for summary judgment, twenty-eight days after the Defendant submitted Jonathan's affidavit in support of her memorandum in opposition to that motion, and thirteen days after the preliminary hearing on that motion—that the Defendant at last filed a Rule 26(e) supplement to disclose Jonathan as a witness.[20]

The Defendant offers three principal grounds for opposing the Motion to Strike under Rules 26 and 37.[21] First, she argues that she timely disclosed Jonathan because the Court's Order

---

[17] *See* Dkt. Nos. 13, 15, & 17.

[18] Fed. R. Civ. P. 26(e)(1).

[19] *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F.Supp.3d 1155, 1168-69 (D. Colo. 2015) (citing *Jama v. City & County of Denver*, 304 F.R.D. 289, 298-99 (D. Colo. 2014)).

[20] Dkt. No. 30, at 2. The earliest the Defendant could argue that she disclosed Jonathan as a witness was when she submitted his affidavit on March 1, 2021, though this too occurred after discovery had concluded. The Defendant's Rule 26(e) supplement also added three more previously-undisclosed witnesses, including B.S. and the Plaintiff's father. *Id.* at 2-3.

[21] The Defendant advances other reasons why Jonathan's affidavit should not be stricken, including that his testimony is relevant, based on personal knowledge, and admissible in evidence. Dkt. No. 31, at 3-5. Since such arguments, even if true, do not affect the inquiry under Rules 26 and 37, the Court will not consider them.

Governing Scheduling and Preliminary Matters (Scheduling Order) gave her until May 21, 2021 to provide her final list of witnesses and exhibits. The Defendant's argument conflates two distinct concepts: initial disclosures under Rule 26(a)(1) and pretrial disclosures under Rule 26(a)(3).[22] These rules are distinct not only because they reside in separate paragraphs of Rule 26(a) under discrete headings, but also, and more importantly, because the disclosures mandated by each occur at different times in litigation and fulfill different purposes. As noted previously, initial disclosures take place early in a case. Their purpose is "to accelerate the exchange of basic information and 'help focus the discovery that is needed,'" as well as to eliminate surprise.[23] By contrast, pretrial disclosures occur later, "relatively close to the trial date,"[24] and consist of, among other things, identification of witnesses "the party expects to present [at trial] and those it may call if the need arises."[25] The filing of pretrial disclosures triggers a fourteen-day period in which parties may list objections to the evidence disclosed.[26] "The objective is to eliminate the time and expense in making these disclosures of evidence and objections in those cases that settle shortly before trial, while affording a reasonable time for final preparation for trial in those cases that do not settle."[27]

---

[22] *See Cooper v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2019 WL 1028530, at *11 (N.D. Miss. Mar. 4, 2019) ("The initial disclosure requirements of Rule 26(a)(1), which require the disclosure of people *with discoverable information*, are distinct from the pretrial disclosure requirements of Rule 26(a)(3), which require the *disclosure of witnesses for trial*." (citing Fed. R. Civ. P. 26(a)(3))).

[23] *Poitra v. Sch. Dist. No. 1*, 311 F.R.D. 659, 663 (D. Colo. 2015) (quoting Fed. R. Civ. P. 26(a) advisory committee notes to 1993 amendment *and Windom v. FM Indus., Inc.*, No. 8:00CV580, 2003 WL 21939033, at *2 (D. Neb. Aug. 12, 2003)); *see also Biltrite Corp. v. World Road Markings, Inc.*, 202 F.R.D. 359, 362 (D. Mass. 2001) ("The obvious purpose of the disclosure requirement of Rule 26(a)(1)(A) . . . is to give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation, either for purposes of serving a proposed amended complaint . . . or for being interviewed or for being deposed or for doing background investigation.").

[24] Fed. R. Civ. P. 26(a)(3) advisory committee notes to 1993 amendment. Rule 26(a)(3)(B) specifically states that "[u]nless the court orders otherwise, [pretrial] disclosures must be made at least 30 days before trial."

[25] Fed. R. Civ. P. 26(a)(3)(A)(i).

[26] Fed. R. Civ. P. 26(a)(3)(B).

[27] Fed. R. Civ. P. 26(a)(3) advisory committee notes to 1993 amendment.

To emphasize the distinction between initial and pretrial disclosures, Rule 26(a)(3) provides that pretrial disclosures are "[i]n addition to the disclosures required by Rule 26(a)(1)."[28]

The May 21 deadline in this case was the Defendant's Rule 26(a)(3) pretrial disclosure deadline; the Scheduling Order makes this clear by providing the parties "fourteen (14) days after service of final lists of witnesses and exhibits to list objections pursuant to Fed. R. Civ. P. 26(a)(3) and Bankruptcy Rule 7026,"[29] which language tracks the text of Rule 26(a)(3)(B). Rule 26(a)(1) disclosures, however, were due much earlier on July 10, 2020.[30] Since pretrial disclosures are distinct from and in addition to initial disclosures, the Defendant cannot meet the Rule 26(a)(1) disclosure requirement by arguing that she disclosed Jonathan before the Rule 26(a)(3) deadline.

Moreover, if the Defendant were permitted to treat the Rule 26(a)(3) deadline as though it were the Rule 26(a)(1) deadline, it would completely undermine the purposes of Rule 26(a)(1). As a witness whose testimony concerned a material fact—when the Plaintiff knew of B.S.'s marriage[31]—Jonathan should have been disclosed initially under Rule 26(a)(1) or, at the latest, when the Defendant learned that her prior initial disclosure was incomplete or incorrect, thereby providing sufficient time for the Plaintiff to conduct discovery, perhaps through a deposition, with respect to his testimony on that issue. But the Defendant's disclosure of Jonathan only after the close of fact discovery and after the Plaintiff moved for summary judgment deprived the Plaintiff of that opportunity. This tardy disclosure caused nothing less than the very surprise Rules 26(a)(1) and (e) attempt to avoid. Therefore, the Defendant's argument that she timely disclosed Jonathan because she did so before May 21 misses the mark. Jonathan should have been disclosed earlier

---

[28] Fed. R. Civ. P. 26(a)(3)(A).
[29] Dkt. No. 8, ¶ 6.
[30] *Id.* ¶ 2.
[31] *See* Memorandum Decision on Plaintiff's Motion for Summary Judgment, note 48 and accompanying text.

so that the investigative processes encouraged by the exchange of initial disclosures could commence. Disclosing Jonathan only after the time for such processes had run means that the Defendant's disclosure was untimely by definition.

Second, the Defendant contends that she did not anticipate that Jonathan would be needed as a witness until the Plaintiff submitted his affidavit asserting that he did not know of B.S.'s marriage until February 28, 2019. While the record does not indicate when or how the Defendant became aware that Jonathan had discoverable information on this subject,[32] the history of this case shows that the question of when the Plaintiff knew of the marriage has been at issue since the outset. The complaint alleges, in relevant part, that the "Plaintiff, unaware of [B.S.'s] marriage, continued paying child support on her behalf after she was married," and "[a]fter Plaintiff became aware of [B.S.'s] marriage, he brought it to the attention of ORS and provided them with a copy of her marriage certificate."[33] The Plaintiff's § 523(a)(2)(A) claim in particular relies on the allegations that the Plaintiff continued to pay child support unaware of the marriage while the Defendant accepted those payments and intentionally failed to inform him of it.[34] These allegations were certainly sufficient to alert the Defendant that the Plaintiff's knowledge of B.S.'s marriage would be an issue in this case. But if that were not enough, at the January 12 hearing on the Defendant's motion for summary judgment the Court discussed with both parties the question of when the Plaintiff learned of the marriage and how the Plaintiff's knowledge could affect the § 523(a)(2)(A) and (a)(15) claims, thereby emphasizing that that would be a relevant and material fact in this case. The Defendant's counsel even conceded at that time that the Plaintiff's knowledge

---

[32] The Plaintiff's affidavit could not have alerted the Defendant that Jonathan possessed discoverable information since it does not mention Jonathan at all, much less the lunch meeting at which Jonathan asserts that the Plaintiff admitted to knowing of B.S.'s marriage for some time.
[33] Dkt. No. 1, ¶¶ 16-17.
[34] Id. ¶¶ 22-25.

was material and in genuine dispute with respect to both claims. Despite that, the Defendant failed to disclose Jonathan as a witness during the twenty-four days between that hearing and the close of fact discovery even though Jonathan's testimony bore directly on the Plaintiff's knowledge of B.S.'s marriage. Notably, the Defendant has not excused her tardy disclosure of Jonathan on the grounds that she only learned that he had discoverable information after the Plaintiff filed his summary judgment motion. In sum, the record in this case clearly demonstrates that the Defendant knew well before the Plaintiff moved for summary judgment—and the close of fact discovery— that evidence of the type offered by Jonathan's affidavit would be necessary in this case, whether at summary judgment or trial. And since the Defendant has not argued that she became aware of Jonathan's testimony only after that time, the Court concludes that the Defendant's second argument is implausible.

Third, the Defendant asserts that she was not required to disclose Jonathan because his testimony rebuts portions of the Plaintiff's affidavit. Rule 26(a)(1), however, contains no exemption from disclosure on the basis that a witness's testimony rebuts that of another witness. In fact, "[w]itnesses, including rebuttal witnesses, are subject to the Rule 26(a)(1) disclosure requirements, unless they are offered solely for impeachment purposes."[35] At oral argument the Defendant's counsel conceded that he was equating rebuttal evidence with impeachment evidence.[36] The Court therefore interprets the Defendant's argument as the assertion that Jonathan

---

[35] *Faure v. Las Cruces Med. Ctr., LLC*, No. 14cv559 KG/KBM, 2017 WL 4119162, at *2 (D.N.M. Sept. 15, 2017) (citing *Searles v. Van Bebber*, 251 F.3d 869, 877 (10th Cir. 2001)).

[36] "Rebuttal evidence 'allows a party to explain, repel, contradict or disprove an adversary's proof.'" *United States v. Watson*, 766 F.3d 1219, 1245 (10th Cir. 2014) (quoting *United States v. Magallanez*, 408 F.3d 672, 681 (10th Cir. 2005)). It is not, as the Defendant would have it, equivalent to impeachment evidence; rather, it can take the form of impeachment or substantive evidence depending on the circumstances. *See id.* n.19 ("This is not to say that rebuttal-witness testimony is categorically only admissible as impeachment evidence (as opposed to substantive evidence). Indeed, in certain circumstances, rebuttal evidence can constitute substantive evidence." (citation omitted)).

falls within the impeachment exception of Rule 26(a)(1)(A)(i), that is, he need not have been disclosed because his testimony would be used solely for impeachment.

This argument also misses the mark. "[I]mpeachment evidence is offered to 'undermine a witness's credibility,'" and stands in contrast to substantive evidence, "which is 'offered to help establish a fact in issue.'"[37] Impeachment evidence can take several forms, including impeachment by contradiction, "which occurs when an opposing party endeavors to show that a fact to which the witness has testified is not true."[38] Importantly, while most evidence is either impeachment or substantive,[39] impeachment by contradiction evidence is a notable exception and can constitute both: "Evidence that impeaches by contradiction, and is not collateral, can be both substantively admissible, as well as admissible for its impeachment value."[40] The Tenth Circuit has recently noted that its "case law distinguishing evidence used solely for impeachment from substantive evidence in [the Rule 26(a)] context is not very developed."[41] Even so, the Tenth Circuit "ha[s]

---

[37] *Id.* at 1244 (quoting *Black's Law Dictionary* 637, 640 (9th ed. 2009)); *see also Standley v. Edmonds-Leach*, 783 F.3d 1276, 1282 (D.C. Cir. 2015) ("By contrast to substantive evidence, which is offered to establish the truth of a matter to be determined by the trier of fact, impeachment evidence is offered to discredit a witness to reduce the effectiveness of her testimony by bringing forth evidence which explains why the jury should not put faith in her testimony." (citations and internal quotation marks omitted)).

[38] *United States v. Cerno*, 529 F.3d 926, 934 (10th Cir. 2008) (citing *United States v. Crockett*, 435 F.3d 1305, 1313 (10th Cir 2006)); *see also Standley*, 783 F.3d at 1282 ("Impeachment evidence used 'to attack the credibility of witnesses by the presentation of evidence showing that facts asserted or relied upon in their testimony are false impeaches by contradiction.'" (quoting *Wegener v. Johnson*, 527 F.3d 687, 691 (8th Cir. 2008))). One court has divided the types of impeachment evidence according to the following taxonomy: "(1) impeachment by demonstration of bias, prejudice, interest in the litigation, or motive to testify in a particular fashion; (2) impeachment by contradiction; (3) impeachment by demonstration of incapacity to perceive, remember or relate; (4) impeachment by untruthful character or prior bad acts; (5) impeachment by conviction of a crime; and (6) impeachment by prior inconsistent statement." *Newsome v. Penske Truck Leasing Corp.*, 437 F.Supp.2d 431, 435 (D. Md. 2006) (citing *Behler v. Hanlon*, 199 F.R.D. 553, 560 (D. Md. 2001)).

[39] *See, e.g.*, *United States v. Eaton*, 485 F.2d 102, 105 (10th Cir. 1973) ("[Prior inconsistent statements] are admissible only to impeach or discredit the witness, and are not competent substantive evidence of the facts to which the former statements relate." (citing *Brooks v. United States*, 309 F.2d 580 (10th Cir. 1962))).

[40] *Newsome*, 437 F.Supp.2d at 435 (quoting *Behler*, 199 F.R.D. at 558).

[41] *Slavin v. Garrison Prop. & Cas. Ins. Co.*, 805 F. App'x 561, 568 (10th Cir. 2020) (unpublished) (citing *Standley*, 783 F.3d at 1281-84).

suggested that the evidence should have no substantive value" in order to fit within the Rule 26(a)(1)(A)(i) impeachment exception.[42] Therefore, whether Jonathan's affidavit fits within that exception hinges on whether it is offered solely for impeachment or whether it has at least some substantive value.

The Court concludes that Jonathan's affidavit is not offered solely for impeachment. The affidavit consists of eleven paragraphs, the first four of which are introductory and state Jonathan's state of residence, age, and relationship to the parties, and assert that the affidavit meets the requirements of Rule 56(c)(4). Accordingly, the Court need not classify these paragraphs as substantive or impeachment evidence. The remaining seven divide into two topics—paragraphs five through seven concern when the Plaintiff learned of B.S.'s marriage, while eight through eleven deal with B.S.'s finances. As regards the latter topic, Jonathan states that B.S. lacked financial stability after her marriage; her then-husband did not take care of her financially and she "would have been without food, clothes," and other necessities without funds from the Defendant.[43] The statements in this latter category do not impeach any of the Plaintiff's testimony, since his affidavit does not mention B.S.'s financial condition or needs. Instead, Jonathan's statements attempt to provide substantive evidence that B.S. needed financial support and received it from the Defendant.[44] Since Jonathan's affidavit contains at least some substantive evidence, the

---

[42] *Id.* (citing *Searles*, 251 F.3d at 877).

[43] Dkt. No. 27-1, ¶¶ 8-11.

[44] The relevance of such evidence to a § 523(a)(15) claim is not immediately apparent, and the Defendant does not elucidate its purpose. The Court surmises that the Defendant would use it at trial to argue that the Plaintiff continued making child support payments after he learned of B.S.'s marriage because he wanted to improve B.S.'s financial condition and knew that some portion of the payments would be funneled to her through the Defendant. Such an argument would go to whether any of the six post-marriage payments were intended as gifts. *See* Memorandum Decision on Plaintiff's Motion for Summary Judgment, note 48. Of course, the Defendant would have to prove that the Plaintiff knew of B.S.'s financial condition.

Defendant cannot offer it for impeachment alone, and it does not satisfy the Rule 26(a)(1)(A)(i) impeachment exception.

But even if paragraphs eight through eleven were excised, the affidavit would still not fall within the exception. Paragraphs five through seven plainly attempt to disprove or at least cast doubt on the Plaintiff's version of when he learned of B.S.'s marriage by asserting that the Plaintiff told Jonathan he had known of the marriage for months prior to February 28, 2019. In so doing, the Defendant is impeaching the Plaintiff's testimony by contradiction. But this evidence does more than impeach; it attempts to establish a fact in issue, namely, when the Plaintiff learned of the marriage. In other words, it also constitutes substantive evidence.

This conclusion stems in part from the procedural posture of the case, which is before the Court on summary judgment. As the non-movant, the Defendant must come forward with "specific facts showing that there is a genuine issue for trial"[45] and do more than merely attack the credibility of the Plaintiff's evidence to prevent the Plaintiff from prevailing on summary judgment.[46] By presenting substantive evidence regarding when the Plaintiff learned of B.S.'s marriage, Jonathan's affidavit attempts to offer the specific facts required to survive the Plaintiff's summary judgment motion.[47] Since paragraphs five through seven perform a dual role as substantive and

---

[45] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[46] *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358 F.3d 736, 742 (10th Cir. 2004) ("Standing alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion." (citing *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996))).

[47] Even if this matter went to trial the exception still would not apply to Jonathan. To be sure, the Defendant might use Jonathan's testimony that the Plaintiff knew of B.S.'s marriage "[f]or some time" to undermine the Plaintiff's credibility by asserting that he cannot be believed because he told Jonathan one thing and the Court another on the issue of when he knew of the marriage. But Jonathan's testimony would chiefly help establish when he knew of the marriage, which is substantive evidence. At best, Jonathan's testimony would contain a mixture of impeachment and substantive evidence. Since the impeachment exception to Rule 26(a)(1)(A)(i) requires that the information used to support a party's claims or defenses "be solely for impeachment," and Jonathan's testimony, whether at summary judgment or trial, is not purely impeachment evidence, he does not qualify for the impeachment exception.

14

impeachment evidence, they do not, even considered in isolation, meet the Rule 26(a)(1)(A)(i) requirement that evidence be offered solely for impeachment.[48]

Having concluded that the Defendant failed to timely disclose Jonathan under Rules 26(a)(1) and (e), and having determined that none of the Defendant's arguments alter that result, the Court turns to the sanctions imposed for such failures. Rule 37(c)(1) "addresses a party's failure to disclose or supplement initial disclosures,"[49] and states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."[50] "For purposes of Rule 37(c)(1), a party's failure to disclose is substantially justified where the non-moving party has a reasonable basis in law and fact, and where there exists a genuine dispute concerning compliance."[51] The burden to show substantial justification or harmlessness lies with "the party who failed to make the required disclosure."[52]

While a court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose,"[53] the Tenth Circuit has prescribed certain factors to guide a court's Rule 37(c)(1) inquiry—called the *Woodworker's* factors after the case that adopted them—and they include: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which

---

[48] *Hicks v. United States*, 85 Fed. Cl. 634, 635 (Fed. Cl. 2009) ("Because the discovery exceptions apply only if the evidence is 'solely' for impeachment, evidence that serves both impeachment and substantive purposes falls outside these exceptions." (citations omitted)).

[49] *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1200 (10th Cir. 2017).

[50] Fed. R. Civ. P. 37(c)(1).

[51] *Smith v. Aurora Pub. Schs.*, 318 F.R.D. 429, 432 (D. Colo. 2016) (quoting *Poitra*, 311 F.R.D. at 668).

[52] *Adkins v. TFI Family Servs., Inc.*, No. 13-CV-2579-DDC-GLR, 2017 WL 3130587, at *4 (D. Kan. July 24, 2017) (citation omitted).

[53] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (citation omitted).

introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[54] The Tenth Circuit later expanded on *Woodworker's Supply* by cautioning against excluding evidence as a sanction under Rule 37 if the effect of that exclusion is to end the litigation.

> [W]here the exclusion of evidence under Rule 37(c)(1) has the necessary effect of a dismissal, . . . courts should, in conjunction with the traditional *Woodworker's* inquiry, carefully explore and consider the efficacy of less drastic alternatives, ordinarily reserving the extreme sanction of dismissal for cases involving bad faith or willfulness or instances where less severe sanctions would obviously prove futile.[55]

To be sure, the exclusion of Jonathan's affidavit would not result in dismissal of this case; rather, it would lead to a grant of summary judgment in the Plaintiff's favor. Even so, the Court believes, based on the rule announced in *HCG Platinum*, that "the necessary effect of dismissal" includes such an outcome.[56] The Tenth Circuit's analysis of the necessity to consider lesser sanctions included an approving discussion of *Gillum v. United States*,[57] one of its own prior cases. In *Gillum*, the district court excluded the testimony of the plaintiff's expert based on non-compliance with Rule 26(a)(2) and, because the plaintiff could not establish a prima facie case without that testimony, granted summary judgment to the defendant.[58] While acknowledging that the plaintiff's expert report did not comply with Rule 26(a)(2)(B) and the defendant was "hampered in preparing for [the expert's deposition]," the Tenth Circuit held that "the total exclusion of [the expert's] testimony, which necessarily resulted in the grant of summary judgment for [the defendant], was too extreme a sanction."[59] In *HCG Platinum*, the Tenth Circuit found

---

[54] *HCG Platinum, LLC*, 873 F.3d at 1200 (quoting *Woodworker's Supply, Inc.*, 170 F.3d at 993).
[55] *Id.* at 1206.
[56] *See LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 188 (D. Kan. 2021) ("If the exclusion of evidence would be dispositive, it is subject to more careful scrutiny." (citing *HCG Platinum, LLC*, 873 F.3d at 1203)).
[57] 309 F. App'x 267 (10th Cir. 2009) (unpublished).
[58] *Id.* at 268-69.
[59] *Id.* at 269-70 (citation omitted).

"*Gillum*'s implicit incorporation of a lesser-sanctions approach to the Rule 37(c)(1) inquiry persuasive" and adopted that approach.[60] Since the effect of excluding Jonathan's affidavit here is dispositive of the litigation, the Court believes it must examine lesser sanctions as part of the *Woodworker's* analysis.

Regarding the first *Woodworker's* factor—prejudice or surprise to the Plaintiff—the Court concludes that the surprise to the Plaintiff caused by the Defendant's tardy disclosure of Jonathan has been substantial. The Plaintiff filed his motion for summary judgment at the close of fact discovery, reasonably assuming that, based on the witnesses disclosed and evidence exchanged up to that point, there remained no genuine disputes of material fact on his § 523(a)(15) claim, particularly on the question of when he learned of B.S.'s marriage. To have an undisclosed witness emerge from the woodwork in opposition to that motion created the type of surprise Rules 26(a)(1) and (e) attempt to prevent.

The timing of Jonathan's disclosure also caused substantial prejudice to the Plaintiff. Since that disclosure occurred after the close of fact discovery, it forced the Plaintiff to defend against new testimony while depriving him of the choice to depose Jonathan and conduct other discovery with respect to that testimony. As one court has noted, the benefits parties receive from Rule 26 disclosures in framing discovery

> is not a minor consideration. If one party lists a potential witness on its Rule 26 disclosures, the other parties know that they might see or hear that person's testimony for the first time at summary judgment or trial. The other parties can then make a calculated decision whether to seek discovery from that person and thereby mitigate the possibility of surprise, or, on the other hand, whether the expense of deposing that individual outweighs the consequences of potential surprise later. Obviously a party is deprived of this choice if the person is never listed as a potential witness.[61]

---

[60] *HCG Platinum, LLC*, 873 F.3d at 1205.

[61] *Smith*, 318 F.R.D. at 431; *see also Baemmert v. Credit One Bank, N.A.*, 271 F.Supp.3d 1043, 1051 (W.D. Wis. 2017) (declining to consider the declaration of an undisclosed witness presented for the first time after the plaintiff moved for summary judgment and noting that the untimely disclosure was "not

Discovery concerning Jonathan's testimony would also have informed the Plaintiff whether seeking summary judgment, considering the fees required to do so, was a prudent course of action or whether the case would have to proceed to trial and, if so, what factual issues would need to be decided by the trier of fact. As it turned out, the Plaintiff went to the expense of moving for summary judgment without the assistance of that information. Based on the surprise and prejudice suffered by the Plaintiff, the Court concludes that the Defendant's failure to timely disclose Jonathan was not harmless and the first factor weighs in favor of excluding Jonathan's affidavit.

As regards the second factor—the Plaintiff's ability to cure the prejudice—the Court concludes that the only way to cure the prejudice would be to reopen discovery and, at a minimum, permit the Plaintiff to depose Jonathan. Perhaps the deposition would necessitate additional discovery. While reopening discovery appears to present a simple cure, two problems complicate the matter. First, the Defendant has not sought to alleviate the prejudice to the Plaintiff caused by her untimely disclosure of Jonathan by moving to modify the Scheduling Order to reopen discovery. Second, the Plaintiff would incur costs to conduct such discovery, and the Defendant's ability to compensate him for such costs is unknown. Because of these potential difficulties in effectuating a cure, the second factor is neutral in this case.

The third factor examines the extent to which introducing Jonathan's testimony would disrupt trial. While trial has not been set, reopening discovery would push the final pretrial conference and trial into the future, and the Tenth Circuit affirmed a district court's conclusion that the third *Woodworker's* factor weighed in favor of exclusion of evidence based in part on such considerations.[62] Even so, rescheduling final pretrial conferences and trials occurs with some

harmless because [it] deprived [the plaintiff] of the opportunity to impeach this evidence before summary judgment").

[62] *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, 835 F. App'x 334, 344 (10th Cir. 2020) (unpublished).

frequency. And where trial has not been set and where the parties have not commenced the tasks attendant to it, such as drafting the pretrial order, compiling exhibit binders, filing pretrial briefs, and generally preparing for trial, any burden or inconvenience caused by rescheduling would be, in the absence of contrary evidence, *de minimis*. The Court therefore concludes that the third factor does not favor exclusion.

The fourth *Woodworker's* factor looks at the Defendant's bad faith or willfulness, and the following facts bear on this inquiry. Jonathan's testimony contains substantive evidence regarding the Plaintiff's knowledge of B.S.'s marriage, a fact material to the § 523(a)(2)(A) and (a)(15) claims. The Defendant was on notice since the filing of the complaint that this fact would be material to this case and admitted as much at the January 12 hearing, even conceding it was in genuine dispute. The Defendant did not timely disclose Jonathan under Rule 26, and Jonathan's role as a witness and the substance of his testimony only came to light when she used his affidavit in an attempt to stave off the Plaintiff's summary judgment motion. The record does not show when and how the Defendant learned that Jonathan had discoverable information on that fact, but the Plaintiff's affidavit, which does not mention Jonathan, did not alert her to his potential role as a witness. Moreover, the Defendant has not asserted that she did not learn that he had discoverable information until after the Plaintiff moved for summary judgment. Rather, she has made the different claim that she did not anticipate that his testimony would be necessary until the Plaintiff submitted his affidavit concerning his knowledge of B.S.'s marriage.

Based on these facts, the Court must conclude that the Defendant willfully withheld disclosing Jonathan. To reach that conclusion, the Court must first determine when the Defendant knew of Jonathan's testimony. The evidence points to some time prior to the fact-discovery deadline. Since the Defendant does not contend that she learned that Jonathan had discoverable

19

information only after the Plaintiff moved for summary judgment, a reasonable inference is that she knew of Jonathan's testimony before the fact-discovery deadline. Moreover, if the Defendant could claim on January 12 that the Plaintiff's knowledge of B.S.'s marriage was in genuine dispute and the only evidence she has presented to dispute that fact is Jonathan's affidavit, then it is likely that she knew of Jonathan's testimony even at that time.

Next, the question is whether the failure to timely disclose Jonathan was willful. That failure appears to be an intentional act, perhaps based on the mistaken belief that his testimony consisted solely of impeachment evidence. Indeed, the Defendant's only argument concerning why Jonathan's late disclosure might be substantially justified is that she should have the ability to impeach the Plaintiff's testimony. At best, the Defendant's argument implies that she believed that Jonathan was exclusively an impeachment witness and therefore exempt from disclosure, though the Defendant never expressly contended that any such belief constituted substantial justification. In any event, this belief cannot constitute substantial justification since it lacks a reasonable basis in law or fact. The question of when the Plaintiff learned of B.S.'s marriage was always a substantive evidentiary issue because its resolution would be necessary to determine the Plaintiff's § 523(a)(2)(A) and (a)(15) claims. Therefore, the Defendant's assertion that she did not anticipate needing Jonathan's testimony until the Plaintiff submitted his affidavit rings hollow; his testimony, or other testimony concerning the Plaintiff's knowledge of B.S.'s marriage, was always going to be needed at some point in this case. It was only when the Plaintiff's and Jonathan's disagreement on that point emerged that Jonathan's testimony took on the additional characteristic of impeachment by contradiction. In sum, the Defendant appears to have held Jonathan in reserve until his testimony was needed to contradict the Plaintiff's evidence. Such an approach is nothing

less than willful, and because Jonathan's testimony plainly contains a mixture of impeachment and substantive evidence, there is no substantial justification for his non-disclosure under Rule 26.

On balance, the *Woodworker's* factors, particularly the conclusion that the Defendant willfully failed to disclose Jonathan, favor exclusion of Jonathan's affidavit as a sanction. The Court now turns to the efficacy of lesser sanctions. Rule 37(c)(1) offers three categories of alternatives: requiring the violating party to pay the other party's "reasonable expenses, including attorney's fees, caused by the failure"; informing the jury of the failure; and imposing "other appropriate sanctions," including those listed in Rule 37(b)(2)(A)(i)-(vi).[63] The second and third categories offer little in the way of alternative sanctions. Informing the jury of the Defendant's non-disclosure is not an option here since this case would involve a bench trial. And all but one of the measures incorporated by reference to Rule 37(b)(2) consist of sanctions that either exclude evidence or dispose of the action, including ordering that certain "facts be established for purposes of the action," "prohibiting the disobedient party . . . from introducing designated matters in evidence," "striking pleadings in whole or in part," "dismissing the action or proceeding in whole or in part," and "rendering a default judgment against the disobedient party." Since these sanctions are equivalent to exclusion or have the necessary effect of a dismissal, they do not constitute less severe sanctions and cannot be imposed as an alternative under the *HCG Platinum* analysis.

The sole remaining enumerated options are staying further proceedings under Rule 37(b)(2)(A)(iv) and ordering the Defendant to pay the Plaintiff's reasonable expenses, including attorney's fees, caused by the failure to disclose Jonathan. These two sanctions go hand-in-hand. The only reason to stay these proceedings would be to reopen discovery, and if the Court did so the Defendant should be required to reimburse the Plaintiff for the costs related to such discovery.

---

[63] Fed. R. Civ. P. 37(c)(1)(A)-(C).

The Court declines to impose these sanctions as an alternative to the exclusion of Jonathan's affidavit, however. The Defendant has indicated no inclination or ability to pay the Plaintiff's expenses. More importantly, the sanction of exclusion is appropriate and justified by the conclusion that the Defendant willfully withheld Jonathan from disclosure and only revealed him to oppose the Plaintiff's motion for summary judgment.

Importantly, the Tenth Circuit has previously affirmed the exclusion of evidence from untimely-disclosed witnesses in analogous circumstances. In one case, a doctor sued a hospital and members of one of its committees for discrimination and other claims after that committee recommended that the doctor's request to renew his medical staff privileges be denied.[64] When the defendants moved for summary judgment the doctor opposed that motion in part by "submitt[ing] the affidavits of two new and unannounced witnesses."[65] Like the Plaintiff here, the defendants in *Vesom* moved in their reply to strike those affidavits "because neither witness was disclosed in [the doctor's] original or amended witness lists as required by Fed. R. Civ. P. 26(a)(1) & (e)(1)."[66] Concluding that the doctor had not shown substantial justification for the late disclosure and that "the witnesses and their testimony were known to [the doctor]," who could have disclosed them before he responded to the summary judgment motion, the district court struck the affidavits under Rule 37(c).[67] On appeal, the Tenth Circuit condemned the doctor's choice to sandbag the opposition and held that the district court had not abused its discretion in excluding the affidavits.[68]

In another case, a former employee sued Target for discrimination after it terminated her employment.[69] When Target moved for summary judgment, the former employee's response

---

[64] *Vesom v. Atchison Hosp. Ass'n*, 279 F. App'x 624, 626 (10th Cir. 2008) (unpublished).
[65] *Id.* at 631.
[66] *Id.*
[67] *Id.*
[68] *Id.* at 631-32.
[69] *Martinez v. Target Corp.*, 384 F. App'x 840, 843-44 (10th Cir. 2010) (unpublished).

included "excerpts from two expert reports" prepared for a collective action pending in Oklahoma that she had "tried, but failed, to join."[70] The plaintiff admitted that she had "identified the experts for the first time" in that response.[71] Target moved to strike the reports because the plaintiff had not disclosed them under Rule 26(a)(2)(B). Noting that the plaintiff "did not submit the reports until nine months after the deadline for expert disclosure had passed, seven weeks after discovery had closed, and only *after* Target had filed its motion for summary judgment," and concluding that "the late disclosure prejudiced Target, as discovery would have to be reopened and summary judgment briefing completed anew," the district court struck the reports under Rule 37(c)(1).[72] The Tenth Circuit affirmed on appeal.

The salient facts of this case align favorably with those of *Vesom* and *Martinez*. Accordingly, and in conjunction with the *Woodworker's* and *HCG Platinum* analyses, the Court determines that the appropriate sanction for the Defendant's violation of Rule 26 is to exclude Jonathan's affidavit and thereby preclude the Defendant from using it as evidence to oppose the Plaintiff's motion for summary judgment.

## IV. CONCLUSION

The Defendant failed to timely disclose under Rules 26(a) and (e) a witness with material, substantive information bearing on the Plaintiff's § 523(a)(2)(A) and (a)(15) claims. Instead, the Defendant only revealed him when she used his affidavit in an attempt to defeat the Plaintiff's motion for summary judgment. Because the Court has determined that the appropriate sanction for this action is the exclusion of that affidavit, the Court will grant the Motion to Strike and will strike

---

[70] *Id.* at 847.
[71] *Martinez v. Target Corp.*, No. 07-CV-295 JEC/WDS, 2009 WL 10681491, at *2 (D.N.M. Mar. 4, 2009).
[72] *Martinez*, 384 F. App'x at 847-48.

the affidavit of Jonathan Strahan. The Court will issue a separate order and judgment in accordance

with this Memorandum Decision.

_____END OF DOCUMENT_____

**_____ooo0ooo_____**

## <u>DESIGNATION OF PARTIES TO RECEIVE NOTICE</u>

Service of the foregoing **MEMORANDUM DECISION ON PLAINTIFF'S MOTION TO STRIKE** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Kent L. Christiansen          kchristiansen@sagelawpartners.com
Marianne Schumann       mschumann@mmrm.com, mhale@mmrm.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.