**This order is SIGNED.**

**Dated: March 4, 2022**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>CYNTHIA MORRISSEY,<br><br>          Debtor. | Bankruptcy Case No. 20-20505<br>Chapter 7 |
| DAVID STRAHAN,<br><br>          Plaintiff,<br><br>v.<br><br>CYNTHIA EVANS,<br><br>          Defendant. | Hon. R. Kimball Mosier<br><br><br><br>Adversary Proceeding No. 20-2045 |

### MEMORANDUM DECISION ON
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff David Strahan and Defendant Cynthia Morrissey *fka* Cynthia Evans were married for approximately fifteen years and had four children during that time. When they divorced in 2008, the Plaintiff became obligated to pay child support to the Defendant, but under the terms of the divorce decrees such support would cease with respect to a particular child when that child attained the age of majority or married. The parties' youngest child, then still a minor and named

here by her initials B.S., married in August 2018. Unaware of the marriage, the Plaintiff continued paying child support for six months.

When he discovered the marriage, he ceased paying child support and sought to recover from the Defendant the amount he had paid during those six months. He obtained a judgment against the Defendant in state court for the overpaid child support plus court costs. After the Defendant filed bankruptcy in this Court, the Plaintiff timely commenced the above-captioned adversary proceeding seeking to except that debt from the Defendant's discharge.

The Defendant moved for summary judgment first, prevailing on one of the Plaintiff's three claims. Then the Plaintiff filed his own motion for summary judgment, which is the matter before the Court. To oppose that motion, the Defendant submitted the affidavit of Jonathan Strahan, one of the parties' children, whom neither party had disclosed as a witness to that point. The Plaintiff included in his reply memorandum in support of his motion a request to strike Jonathan's affidavit under Rule 37(c)(1) (Motion to Strike).[1] The Court treated it as a motion and established a briefing schedule. The parties fully briefed the motion, and the Court conducted a hearing at which it heard oral argument and issued its ruling granting the Motion to Strike from the bench. The Court then heard oral argument on and considered the Plaintiff's motion for summary judgment in light of that ruling.

The Court has entered its Memorandum Decision on Plaintiff's Motion to Strike, which memorializes its oral ruling granting that motion. Based on the findings and conclusions therein, which the Court incorporates here by reference; after considering the Plaintiff's motion for summary judgment, the parties' memoranda, and exhibits attached thereto (taking into account the ruling on the Motion to Strike); after considering the parties' oral arguments; and after conducting

---

[1] *See* Dkt. No. 28, at 4-5. All subsequent references to docket numbers are to those in this adversary proceeding unless otherwise indicated.

an independent review of applicable law, the Court issues the following Memorandum Decision

granting summary judgment to the Plaintiff.[2]

## I. JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked pursuant to 28

U.S.C. § 1334 and § 157(b)(1). This matter is a core proceeding within the definition of 28 U.S.C.

§ 157(b)(2)(I), and the Court may enter a final order. Venue is appropriate under 28 U.S.C. § 1409.

## II. FACTUAL BACKGROUND

Based upon the record in this case and the Court's ruling on the Plaintiff's Motion to

Strike,[3] the Court finds that there is no genuine dispute as to the following facts. The Plaintiff and

Defendant married in 1993 and divorced in 2008.[4] The Decree of Divorce and Judgment (Divorce

Decree), entered on June 29, 2008 by the Third Judicial District Court of Utah in and for Tooele

County (Divorce Court), required the Plaintiff to pay child support to the Defendant with respect

to each of the parties' four children born of the marriage but provided that

> support for each child terminates at the time (1) a child becomes 18 years of age,
> or has graduated from high school during the child's normal and expected year of
> graduation, whichever occurs later, or (2) a child dies, marries, becomes a member
> of the armed forces of the United States, or is emancipated in accordance with Utah
> Code § 78A-6-801.[5]

---

[2] This Memorandum Decision constitutes the Court's findings of fact and conclusions of law pursuant to
Fed. R. Civ. P. 52(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7052. Any of the
findings of fact herein are deemed, to the extent appropriate, to be conclusions of law, and any
conclusions of law are similarly deemed, to the extent appropriate, to be findings of fact, and they shall be
equally binding as both.
[3] *See* Memorandum Decision on Plaintiff's Motion to Strike.
[4] Dkt. No. 25-3 in Adv. Pro. No. 20-2045, Ex. C, Defendant's Deposition, 16:14-19. All subsequent
references to docket numbers are to those in this adversary proceeding unless otherwise indicated.
[5] Dkt. No. 25-1, Ex. A, ¶ 7.2(a).

3

The Plaintiff's support payments were made through, and administered by, the Utah Office of Recovery Service (ORS).[6] A Modified Decree of Divorce (Modified Divorce Decree), entered on September 25, 2013, retained the provision regarding the conditions under which the Plaintiff's support obligation terminated with respect to a particular child.[7]

By August 2018, three of the four children had previously satisfied at least one of those conditions, leaving the Plaintiff's support obligation limited to the fourth child, B.S. On August 24, 2018, B.S., then under the age of eighteen, married in Nevada,[8] thereby terminating the Plaintiff's remaining support obligation.

The Plaintiff, however, was unaware of the marriage because neither B.S., with whom he had had a falling-out, nor the Defendant informed him of it.[9] In fact, B.S., who was a resident of Utah at the time,[10] had the marriage in Nevada because she did not want anyone to know about it.[11] And according to the Defendant, she and the Plaintiff did not contact each other during 2018 or 2019.[12] The Defendant also did not inform ORS of B.S.'s marriage.[13] Therefore, the Plaintiff continued to pay child support under the assumption that he remained obligated to do so pursuant to the terms of the Divorce Decree and Modified Divorce Decree since none of the other conditions subsequent enumerated in those documents that would terminate the support had yet occurred.

---

[6] Dkt. No. 25-4, Ex. D, at 12 (ORS Case Information printout attached to the Affidavit of David Strahan).
[7] *See* Dkt. No. 25-2, Ex. B, ¶ 7. In fact, during the time between the entry of the Divorce Decree and that of the Modified Divorce Decree, the eldest of the four children had emancipated, prompting a recalculation of the child support the Plaintiff owed to the Defendant. *Id.* ¶ 7(d).
[8] Dkt. No. 25-4, Ex. D, at 10 (Marriage Certificate attached to the Affidavit of David Strahan).
[9] Dkt. No. 25-4, Ex. D, Affidavit of David Strahan, ¶¶ 2-3, 5; *see also* Dkt. No. 25-3, Ex. C, Defendant's Deposition, 34:17-18, 40:3-17, 50:10-13.
[10] Dkt. No. 25-4, Ex. D, at 10 (Marriage Certificate attached to the Affidavit of David Strahan).
[11] Dkt. No. 25-3, Ex. C, Defendant's Deposition, 30:15-31:6, 50:10-13.
[12] *Id.* at 53:13-16. The Defendant has repeatedly characterized the Plaintiff's relationship with her and with B.S. as estranged. Dkt. No. 27, at 2, 5-7.
[13] Dkt. No. 25-3, Ex. C, Defendant's Deposition, 39:14-40:2.

4

In January 2019 the Plaintiff ran into an acquaintance he and B.S. had in common, who informed him that B.S. was married but became uncertain when the Plaintiff pressed for details.[14] The Plaintiff considered the information a rumor but set to investigating it by calling four Utah courthouses near B.S.'s residence to ask if they had record of the marriage. Since B.S.'s marriage occurred in Nevada, the inquiry turned up no results, which increased the Plaintiff's impression that the news of the marriage was likely an unfounded rumor.[15]

Sometime later, however, a different person informed the Plaintiff on Facebook that B.S. had married, possibly outside of Utah.[16] The Plaintiff restarted his investigative efforts, enlisting the help of his father, who called twenty-five courthouses in Utah as well as courthouses in Idaho, Wyoming, and Nevada.[17] Toward the end of February the search bore fruit: An employee at the Elko County Recorder's Office found B.S.'s marriage certificate in their records and forwarded a copy to the Plaintiff's father on February 28, 2019.[18] He sent it to the Plaintiff, who in turn sent it to ORS, all on February 28.[19] The Plaintiff did not know of B.S.'s marriage until he received a copy of the certificate, which was the "first substantial information" he had indicating that B.S. was married.[20]

The Plaintiff then ceased making child support payments to the Defendant.[21] From the time of B.S.'s marriage to the cessation of support payments, the Plaintiff made six months' worth of payments—September 2018 through February 2019—in the amount of $2,709.53, which the

---

[14] Dkt. No. 25-4, Ex. D, Affidavit of David Strahan, ¶¶ 2-3, 5.
[15] *Id.* ¶ 6.
[16] Dkt. No. 25-4, Ex. D, Affidavit of David Strahan, ¶ 7.
[17] *Id.* ¶ 9.
[18] *Id.* ¶ 10; Dkt. No. 25-4, Ex. D, at 7-8 (e-mail chain attached to the Affidavit of David Strahan).
[19] Dkt. No. 25-4, Ex. D, Affidavit of David Strahan, ¶ 11; Dkt. No. 25-4, Ex. D, at 7 (e-mail chain attached to the Affidavit of David Strahan).
[20] Dkt. No. 25-4, Ex. D, Affidavit of David Strahan, ¶ 12.
[21] *Id.* ¶ 13.

Defendant received.[22] The Plaintiff then sought to recover that amount by filing a small claims case against the Defendant in the North Salt Lake Justice Court. On June 4, 2019, that court entered, by default, a Small Claims Judgment in the Plaintiff's favor against the Defendant (Overpayment Debt), which at that time totaled $3,599.53, composed of $2,709.53 in principal and $890 in court costs, and bore interest at 4.59%.[23] When the Defendant filed bankruptcy on January 24, 2020, she listed the balance of the Overpayment Debt as $4,006.97 on her Schedule E/F, and she did not list it as disputed.[24]

## III. DISCUSSION

### A. Legal Standard Under Rule 56

Under Federal Rule of Civil Procedure 56(a), made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, the Court is required to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[25] Substantive law determines which facts are material and which are not. "Only disputes over facts that might affect the outcome of the suit under the governing

---

[22] *See* Dkt. No. 25-3, Ex. C, Defendant's Deposition, 38:8-39:13, 40:18-41:10. The Plaintiff made his last payment on February 1, 2019. Dkt. No. 25-4, Ex. D, Affidavit of David Strahan, ¶ 13.

[23] Dkt. No. 1, Ex. A.

[24] Dkt. No. 2 in Case No. 20-20505, at 14; *see also* Dkt. No. 27, at 10 (stating, as an additional material fact, that "[i]n Schedule F to the Voluntary Petition, Debtor/Defendant lists a debt she owes to Plaintiff in the amount of $4,006.97"). It is not clear what accounts for the difference between the $3,599.53 and $4,006.97 figures. One would presumptively attribute the increase to interest, but calculating 4.59% interest on $3,599.53 from the entry of judgment to the filing of the Defendant's bankruptcy does not produce $4,006.97. The $4,006.97 figure is, however, precisely the amount the Plaintiff claimed the Defendant owed him in an Affidavit and Summons signed by the Plaintiff's attorney on April 3, 2019 in the North Salt Lake Justice Court case. *See* Dkt. No. 1, Ex. E. Of course, that court determined that the Defendant owed the Plaintiff a lesser sum in its June 4, 2019 judgment, and the amount asserted in the Affidavit and Summons cannot control the amount of the Overpayment Debt in light of that judgment. Therefore, while the Defendant listed the amount of the Overpayment Debt as $4,006.97 in her schedules, that figure appears inaccurate. For purposes of this ruling, however, the precise amount of the Overpayment Debt is not material.

[25] Fed. R. Civ. P. 56(a).

law will properly preclude the entry of summary judgment."[26] Whether a dispute is "genuine" turns on whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party."[27] In sum, the Court's function at the summary judgment stage is to "determine whether there is a genuine issue for trial."[28]

The moving party bears the burden to show that it is entitled to summary judgment,[29] including the burden to properly support its summary judgment motion as required by Rule 56(c).[30] If the moving party has failed to meet its burden, "summary judgment must be denied," and the nonmoving party need not respond because "no defense to an insufficient showing is required."[31] Once the moving party meets its initial burden, "the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."[32] The nonmoving party may not rely solely on allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial."[33] The nonmoving party also "must do more than simply show that there is some metaphysical doubt as to the material facts."[34]

When considering a motion for summary judgment, the Court views the record and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party,[35] but the Court does not weigh the evidence or make credibility determinations.[36]

---

[26] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[27] *Id.*
[28] *Id.* at 249.
[29] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[30] *See Murray v. City of Tahlequah, Okla.*, 312 F.3d 1196, 1200 (10th Cir. 2002).
[31] *Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).
[32] *Concrete Works of Colo., Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).
[33] *Celotex*, 477 U.S. at 324.
[34] *Matsushida Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[35] *E.g.*, *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (citation omitted).
[36] *Nat'l Am. Ins. Co. v. Am. Re-Insurance Co.*, 358 F.3d 736, 742-43 (10th Cir. 2004) (citing *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994)).

**B. Legal Standard Under § 523(a)(15)**

The Plaintiff's complaint alleged three grounds to except the Overpayment Debt from the Defendant's discharge: 11 U.S.C. § 523(a)(2)(A), (a)(5), and (a)(15).[37] Only the § 523(a)(15) claim is at issue in the Plaintiff's motion for summary judgment. That provision excepts from a debtor's discharge any debt

> to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

The requirements of § 523(a)(15) can be divided into three elements,[38] which a plaintiff must prove by a preponderance of the evidence: The debt must (1) be owed to a spouse, former spouse, or child of the debtor, (2) not be a domestic support obligation as defined under the Code, and (3) have been incurred in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.

The Defendant concedes that she and the Plaintiff were once married, making the Plaintiff her former spouse, and she acknowledges that she owes the Overpayment Debt to him.[39] She also admits that the Overpayment Debt does not qualify as a domestic support obligation.[40] Indeed, the Defendant's prevailing on her motion for summary judgment on the § 523(a)(5) claim, which

---

[37] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.

[38] *E.g., Yao v. Kao (In re Kao)*, 612 B.R. 272, 286 (Bankr. S.D.N.Y. 2020) (*citing Martelloni v. Martelloni (In re Martelloni)*, Adv. Pro. No. 12-8437-ast, 2013 WL 5873264, at *4 (Bankr. E.D.N.Y. Oct. 31, 2013)).

[39] *See* Dkt. No. 27, at 3, 14 ("It is undisputed that Plaintiff overpaid his obligation to Debtor/Defendant. Plaintiff was awarded the Small Claim's [sic] Court judgment for overpayment of his obligation . . . .").

[40] *Id.* at 11 ("The debt owed to Plaintiff is a reimbursement of an overpayment and is not a domestic support obligation in the nature of child support obligation owed to Plaintiff.").

8

excepts domestic support obligations from discharge, necessarily satisfies the second element of

§ 523(a)(15). The resolution of the § 523(a)(15) claim therefore hinges on the third element.

That element, of course, contains disjunctive sub-elements, "and encompasses two types

of debts to a former spouse; specifically, those incurred: '(1) *in the course of* a divorce or

separation; or (2) *in connection with* a separation agreement, divorce decree, or other order of a

court of record.'"[41] Regarding the first of those sub-elements, the Defendant argues that because

the North Salt Lake Justice Court entered its judgment in 2019, she could not have incurred the

Overpayment Debt in the course of her divorce from the Plaintiff, which occurred more than a

decade earlier in 2008. Concerning the second, she contends that neither the Divorce Decree nor

the Modified Divorce Decree contain any provision regarding overpayments of child support, so

she did not incur the Overpayment Debt in connection with a separation agreement or divorce

decree. The Defendant also asserts that the North Salt Lake Justice Court is not a court of record.

As implied by the italicized text in the previous paragraph, the Defendant's arguments turn

on two important phrases in § 523(a)(15), neither of which is defined by the Code: "in the course

of" and "in connection with." The former signifies a temporal limitation, "requiring the debt be

incurred during the time when the divorce or separation is ongoing."[42] Here, the parties' divorce

became final on June 29, 2008, but the Defendant did not incur the Overpayment Debt until years

later.[43] Since the Defendant incurred the Overpayment Debt subsequent to the parties' divorce and

---

[41] *Carroll v. Bohrer (In re Bohrer)*, 628 B.R. 676, 684 (Bankr. S.D. Cal. 2021) (quoting § 523(a)(15)). The other disjunctive sub-element, "a determination made in accordance with State or territorial law by a governmental unit," is not applicable in this case.

[42] *Id.* at 685; *see also Sessions v. Dimaya*, 584 U.S. ----, ----, 138 S.Ct. 1204, 1219 (2018) (describing the use of the phrase "in the course of" in 18 U.S.C. § 16(b) as "explicit temporal language" and "an express temporal limit").

[43] Neither party has suggested that the divorce remained ongoing for a period of time past June 29, 2008, such as through the entry of the Modified Divorce Decree on September 25, 2013. Even assuming that the divorce remaining ongoing through the entry of the Modified Divorce Decree, however, the Defendant still incurred the Overpayment Debt after that date.

not while it was ongoing, the Plaintiff cannot satisfy the first sub-element's requirement that the Overpayment Debt be incurred in the course of the parties' divorce.

The second sub-element employs the other important phrase, "in connection with," which, in contrast to "in the course of," does not ask when something has occurred but rather whether its substance is related to something else. Indeed, courts have described the term "in connection with" as equivalent to "relating to" and "associated with,"[44] which terms generally indicate congressional intent to give the statute in question a broad reach.[45] The phrase "therefore operates as a topical limitation, requiring that the debt be logically or causally related to an enumerated document."[46]

Based on the undisputed facts in this case, the Court concludes that the Overpayment Debt is logically and causally related to the Divorce Decree and Modified Divorce Decree. Although it is true, as the Defendant notes, that neither document specifically addresses overpayments of support, that does not preclude a finding that they are related to the Overpayment Debt. Crucially, both documents contain express provisions regarding the conditions under which the Plaintiff's support obligation would terminate with respect to a particular child. Just as the Plaintiff's obligation to pay support implies the Defendant's entitlement to receive it, the termination of that obligation logically implies the termination of the corresponding entitlement. And the Defendant's receipt of support payments to which she was not entitled also implies an obligation to refund those payments and the Plaintiff's right to recover them. Therefore, the Divorce Decree and Modified Divorce Decree implicitly define an overpayment of child support, and when the Plaintiff

---

[44] *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128-29 (2d Cir. 2001) (citing *Jackson v. Lajaunie*, 270 So.2d 859, 864 (La. 1972)).
[45] *See Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. ----, ----, 138 S.Ct. 1752, 1760 (2018) ("[T]his Court has typically read the phrase 'relating to' . . . expansively." (citation omitted)); *Coventry Health of Mo., Inc. v. Nevils*, 581 U.S. ----, ----, 137 S.Ct. 1190, 1197 (2017) ("Congress characteristically employs the phrase ['relate to'] to reach any subject that has 'a connection with, or reference to,' the topics the statute enumerates." (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992))).
[46] *In re Bohrer*, 628 B.R. at 685.

overpaid his child support from September 2018 to February 2019, those documents provided the

Plaintiff with the basis to assert that the Defendant was not entitled to those payments. In short,

the Overpayment Debt would not exist but for the Divorce Decree and Modified Divorce Decree.

The inescapable conclusion is that the Overpayment Debt is logically and causally related to those

documents—*i.e.,* it was incurred in connection with them. And because the third element of

§ 523(a)(15) can be satisfied by either the requisite temporal or topical connection,[47] this

conclusion satisfies that third element and requires that the Court grant summary judgment to the

Plaintiff.[48]

     The Defendant argues, however, that the Overpayment Debt is not related to the Divorce

Decree and Modified Divorce Decree because the North Salt Lake Justice Court, rather than the

Divorce Court, entered judgment for that debt. The Defendant appears to believe that the Divorce

Court, which she asserts retained jurisdiction over matters of child support under Utah law,[49] was

the proper court for the Plaintiff to bring his overpayment claim and the proper court to issue any

judgment for the overpayment. This argument fails because it writes additional language into the

text of the statute. Section 523(a)(15) contains no requirement—express or implied—that "limits

---

[47] *See id.* ("[S]o long as the debt owed is linked either through time or relation, it is nondischargeable under § 523(a)(15)."). The Defendant's argument that "[§] 523(a)(15) applies to those debts, other than support obligations, which are incurred at the time of the divorce," Dkt. No. 27, at 14, mischaracterizes the legal standard because it omits the alternative topical connection.

[48] This analysis demonstrates why the Plaintiff's knowledge of B.S.'s marriage is material to the Plaintiff's § 523(a)(15) claim. If the Plaintiff persisted in paying child support to the Defendant even after he knew his obligation to do so had terminated, that would suggest that he made such payments as gifts since the Divorce Decree and Modified Divorce Decree no longer mandated them. And once those documents no longer required support payments, they would also cease to provide a basis for the Plaintiff to recover any overpayments made with knowledge of the marriage, which at that point would presumably be freely given to the Defendant. In short, any "gift" overpayment of child support would not be incurred in connection with the Divorce Decree and Modified Divorce Decree, thereby affecting the third element of the § 523(a)(15) claim.

[49] *See* Utah Code Ann. § 78B-12-104 (2021) ("The court shall retain jurisdiction to modify or vacate the order of support where justice requires."). As used in the Utah Child Support Act, "court" is defined as "the district court or juvenile court." Utah Code Ann. § 78B-12-102 (2021).

it to orders entered by a family law court," or, indeed, any particular court.[50] What matters for purposes of § 523(a)(15) is not whether a court different from the one that entered the divorce decree entered a judgment for a debt, but instead whether the debtor incurred that debt in connection with the divorce decree. The North Salt Lake Justice Court could not have entered the Overpayment Debt without the provisions in the Divorce Decree and Modified Divorce Decree describing the conditions under which the Plaintiff was obligated to make support payments and the conditions under which that obligation ended. In other words, the Defendant incurred the Overpayment Debt in connection with those documents. That the North Salt Lake Justice Court, rather than the Divorce Court, entered the judgment for that debt does not alter that conclusion.

As an additional and separate basis to satisfy the third element of § 523(a)(15), the Court concludes that the Defendant also incurred the Overpayment Debt in connection with an order of a court of record. The Code does not define "court of record," but the common meaning of the term is "[a] court that is required to keep a record of its proceedings."[51] The North Salt Lake Justice Court meets that definition, and its Small Claims Judgment[52] is an order. Since that order established the Overpayment Debt, that debt is causally related to that order. While the Defendant did not elaborate on her contention that the North Salt Lake Justice Court is not a court of record, the argument appears founded on the premise that the Divorce Court should have been the court to enter any judgment concerning the overpayment of child support. That argument fails for reasons similar to those stated in the prior paragraph: The statute does not distinguish among courts of record; as long as a court of record enters the order in question, that is sufficient.

---

[50] *In re Bohrer*, 628 B.R. at 687.
[51] *Court of Record*, Black's Law Dictionary (8th ed. 2005).
[52] Dkt. No. 1, Ex. A.

Nevertheless, the Defendant maintains that the Overpayment Debt does not fall within the ambit of § 523(a)(15) because Congress intended that that provision cover only "non-traditional forms of support such as hold-harmless agreements and property settlements," not overpayment of support debts, in order to "protect the spouse from having to assume marital debts that could be discharged in bankruptcy."[53] The problem for the Defendant is that binding authority, *In re Taylor*,[54] forecloses this argument. In that case, the Tenth Circuit affirmed the bankruptcy court's grant of summary judgment to the debtor's former spouse on his claim to hold a debt for overpayment of spousal support non-dischargeable under § 523(a)(15). Finding the text of the statute plain and unambiguous, the court held that the overpayment debt met the statutory requirements.[55] Similar to the Defendant, the debtor then raised arguments asserting that, notwithstanding the plain language of the statute, § 523(a)(15) should be applied to effectuate Congress's purpose in enacting it, such as to "protect the dependent spouse."[56] The court rejected this argument, noting that "there is no indication that congressional concern extended to the protection of a debtor-dependent spouse who may be responsible for repayment of wrongfully paid spousal support," and concluding that "Congress's concern for the dependent spouse as the creditor when 'hold harmless' agreements are in play does not equate to concern for the dependent spouse as the debtor when repayment is sought of wrongfully paid spousal support."[57]

The Court does not dispute that Congress expressed concern about property settlements and hold harmless agreements when it enacted § 523(a)(15) as part of the Bankruptcy Reform Act of 1994.[58] The legislative history on that point is quite clear:

---

[53] Dkt. No. 27, at 13-14.
[54] *Taylor v. Taylor (In re Taylor)*, 737 F.3d 670 (10th Cir. 2013).
[55] *Id.* at 680.
[56] *Id.* at 680-81.
[57] *Id.* at 681-82.
[58] Pub. L. No. 103-394, § 304, 108 Stat. 4106 (1994).

In some instances, divorcing spouses have agreed to make payments of marital debts, holding the other spouse harmless from those debts, in exchange for a reduction in alimony payments. In other cases, spouses have agreed to lower alimony based on a larger property settlement. If such "hold harmless" and property settlement obligations are not found to be in the nature of alimony, maintenance, or support, they are dischargeable under current law. The nondebtor spouse may be saddled with substantial debt and little or no alimony or support. [Section 523(a)(15)] will make such obligations nondischargeable . . . .[59]

But there is a yawning logical chasm between observing that Congress expressed that concern and concluding that § 523(a)(15) must apply exclusively to property settlements and hold harmless agreements. If Congress harbored an intention to limit the scope of the statute in that way, one would expect Congress to have drafted § 523(a)(15) to reflect it. The text of the statute, however, clearly encompasses many more types of debts than property settlements and hold harmless agreements,[60] and a court "cannot reject an application of the plain meaning of the words in a statute on the ground that [it is] confident that Congress would have wanted a different result."[61] The Tenth Circuit has found the language of § 523(a)(15) plain and unambiguous and has applied that provision to except overpayment of support debts from discharge notwithstanding the legislative history of the statute. The Court agrees with *Taylor* and is bound to follow it. Therefore, the Defendant's argument that § 523(a)(15) does not apply to the Overpayment Debt because it is not a debt concerning a property settlement or hold-harmless agreement must fail.

The Defendant's final argument contends that if the Overpayment Debt is to be excepted from her discharge, it should be in some portion less than the total amount. The Defendant makes

---

[59] H.R. Rep. No. 103-835, at 54 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3363.

[60] *See, e.g.*, *Kinkade v. Kinkade (In re Kinkade)*, 707 F.3d 546, 548-50 (5th Cir. 2013) (affirming a bankruptcy court ruling excepting from discharge a debt the debtor incurred to his ex-wife by borrowing money from her before and during their marriage, which debt was included in a judgment entered by the divorce court); *Hanson v. Brown (In re Brown)*, 541 B.R. 906, 908-10 (Bankr. M.D. Fla. 2015) (excepting from discharge a judgment entered against the debtor for improperly taking funds from her daughter's college savings account).

[61] *In re Taylor*, 737 F.3d at 682 (quoting *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (en banc)).

two points in this regard: first, the Overpayment Debt should be limited to the principal amount entered by the North Salt Lake Justice Court, $2,709.53; and second, the principal should be reduced by child support payments the Plaintiff made while he was aware of B.S.'s marriage.

In order to address the first point, the Court must delineate the component parts of the Overpayment Debt. There is, of course, the principal amount of $2,709.53. Then there is the interest on the principal that has accrued since the North Salt Lake Justice Court entered its June 4, 2019 judgment, although the parties have not offered any evidence regarding the amount of that interest. Finally, there are court costs of $890. The Court interprets the Defendant's position to be that the court costs are dischargeable; the most that can be excepted from discharge is the principal. The Court does not interpret the Defendant to argue that the interest is dischargeable, but even if the Defendant did take that position, it would be incorrect.

As for the court costs, *Taylor* provides guidance. There, the state court awarded the plaintiff $40,660.59 in overpaid spousal support and $10,000 in attorney's fees incurred in moving to terminate his spousal support obligation based on his former spouse's cohabitation with another person in a marriage-like relationship.[62] When the debtor filed bankruptcy, the bankruptcy court excepted the overpaid support and fees from discharge under § 523(a)(15). While the debtor did not challenge the dischargeability of the fees on appeal, the Tenth Circuit affirmed the bankruptcy court's ruling, holding that the entire debt was incurred "in connection with a separation agreement or divorce decree."[63] Similarly, in *In re Arnold*,[64] the debtor's former spouse filed a pre-petition contempt action in state court to enforce a provision of the parties' divorce decree regarding division of an investment account. The state court awarded the former spouse judgment for the

---

[62] *In re Taylor*, 737 F.3d at 673.
[63] *Id.* at 680.
[64] *Reeves v. Arnold (In re Arnold)*, Adversary No. 15-01496, 2016 WL 5390114 (Bankr. D. Colo. June 9, 2016).

unpaid balance of the account along with her fees incurred in bringing the contempt action.[65] When the former spouse commenced an adversary proceeding to except those and other debts from discharge, the debtor argued that the fees were dischargeable but the bankruptcy court disagreed, holding that "[a]ttorney fees incurred in connection with the enforcement of a separation agreement are non-dischargeable."[66] Here, too, the court costs included in the Overpayment Debt were incurred in connection with the Divorce Decree and Modified Divorce Decree because the Plaintiff's suit in the North Salt Lake Justice Court was an effort to enforce their terms regarding his obligation to pay child support. Therefore, the court costs fall within the ambit of § 523(a)(15) and will be excepted from the Defendant's discharge.

As regards the second point: The undisputed evidence before the Court on summary judgment is that the Plaintiff made no child support payments to the Defendant while he was aware of B.S.'s marriage. The Plaintiff made the last of the support payments encompassed by the Overpayment Debt on February 1, 2019, which predated his discovery of B.S.'s marriage later that month on February 28. As a result, there is no factual basis to reduce the Overpayment Debt by any payments purportedly occurring after the Plaintiff's knowledge of the marriage.

## IV. CONCLUSION

The undisputed facts in this case show that the Plaintiff overpaid his child support obligation and obtained a judgment against the Defendant, his former spouse, for that amount plus court costs. The Overpayment Debt clearly falls within the scope of § 523(a)(15) and will therefore

---

[65] *Id.* at *1.
[66] *Id.* at *5 (collecting cases); *see also In re Brown*, 541 B.R. at 912 ("The scope of § 523(a)(15) is broad. Generally, if the underlying obligation is not dischargeable then the associated fees and costs also are not dischargeable." (citations and internal quotation marks omitted)).

be excepted from the Defendant's discharge. The Court will issue a separate order and judgment

in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

**_____ooo0ooo_____**

## <u>DESIGNATION OF PARTIES TO RECEIVE NOTICE</u>

Service of the foregoing **MEMORANDUM DECISION ON PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT** shall be served to the parties and in the manner designated
below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are
registered CM/ECF users:

Kent L. Christiansen          kchristiansen@sagelawpartners.com
Marianne Schumann          mschumann@mmrm.com, mhale@mmrm.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system,
the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.